stephan
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREEN PLAINS TRADE GROUP LLC, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARCHER DANIELS MIDLAND COMPANY,<br><br>Defendant. | 8:20CV279<br><br>ORDER |

      This matter is before the Court on the Motion to Transfer Venue of Plaintiffs' Class Action Complaint Under 28 U.S.C. § 1404(a) (Filing No. 58) filed by Defendant, Archer Daniels Midland Company ("ADM"). For the following reasons, the Court will grant ADM's motion to transfer this case to the United States District Court, Central District of Illinois.

## BACKGROUND

      The plaintiffs, collectively referred to as "Green Plains," produce and sell ethanol. Green Plains Inc. ("GPRE"), is an Iowa corporation with its principal place of business in Omaha, Nebraska, and owns fifteen single-member LLCs that operate bioprocessing plants in Nebraska, Iowa, Minnesota, Texas, Indiana, Illinois, Virginia, and Tennessee. Green Plains Trade Group LLC, ("Green Plains Trade), is a Delaware LLC and subsidiary of GPRE that markets and sells ethanol to third parties on behalf of the single-member bioprocessing LLCs. GPRE, Green Plains Trade, and the fifteen single-member bioprocessing LLCs filed this putative class action in the District of Nebraska against ADM on July 14, 2020, alleging that ADM has been manipulating the price of ethanol. (Filing No. 1).

      ADM, a Delaware corporation with its headquarters in Chicago, Illinois, is a major producer and seller of ethanol throughout the United States, including at the Kinder Morgan Argo Terminal in Argo, Illinois ("Argo Terminal"). Buyers and sellers of ethanol nationwide use the Argo Terminal price assessments to determine what the fair market value of ethanol is at a given time. Pricing services, including the S&P Global Platts ("Platts") and the Oil Price Information Service

("OPIS"), provide benchmark price assessments that reflect the daily trading price of ethanol. One of the price assessments compiled by Platts at the Argo Terminal is the benchmark Chicago Ethanol (Terminal) price, or "Chicago Benchmark Price," calculated every trading day during the Market-on-Close ("MOC") window. Green Plains alleges that beginning in November 2017, ADM began manipulating price falls of ethanol at the Argo Terminal so that ADM would earn larger profits on its derivatives contracts, which increased in value if the price for ethanol decreased at the Argo Terminal. Green Plains alleges ADM did this by flooding the Argo Terminal with ethanol and then quickly lowering offers or accepting low bids as the dominant seller in the MOC pricing window.

Green Plains' putative class action complaint against ADM alleges claims under the Commodity Exchange Act ("CEA") and for tortious interference with the contractual relationships that were tied to OPIS, Platts, CU, the Chicago Benchmark, and other pricing benchmarks impacted by ADM's price manipulation. Green Plains seeks to represent and certify the following class:

> All persons who sold ethanol after November 1, 2017 at prices that were determined in reliance upon the Chicago Ethanol (Platts) Futures (CME symbol: CU), Chicago Ethanol (Platts) Average Price Options (CME symbol: CVR), the CME's Ethanol Futures Contracts (CME symbol: EH), any OPIS price assessments, any Platts price assessments, the Chicago Benchmark price, and any other pricing benchmarks determined by or impacted by Platts Chicago Terminal ethanol assessments, and were damaged as a result of the decrease in the Chicago Ethanol (Terminal) price caused by ADM's trading activity at the Argo Terminal.

Green Plains alleges the following questions of law and fact are common to the proposed class:

- whether ADM manipulated Chicago Benchmark Prices or the prices of Chicago Ethanol Derivatives;
- whether ADM's conduct constitutes manipulation under the CEA;
- whether ADM's conduct constitutes tortious interference with contracts for the physical sale of ethanol;
- whether ADM's conduct was willful and intentional;
- the appropriate class-wide measure of damages, including whether members of the proposed Class are entitled to additional punitive or exemplary damages equal to two times the amount of their actual damages under the CEA; and
- the appropriate injunctive and other equitable relief for the proposed Class.

([Filing No. 1](#)).

ADM has filed a motion to transfer this case to the Central District of Illinois where two other putative class actions are pending against ADM arising out of the same ethanol price

manipulation scheme alleged in Green Plains' complaint.  The first action was filed in the Central District of Illinois on September 4, 2019, by AOT Holding.  AOT Holding is a Swiss Corporation that traded in ethanol derivatives tied to the Chicago Ethanol (Terminal) price, including Chicago Ethanol (Platts) Futures.  AOT alleges that beginning in November 2017, ADM "began to aggressively sell ethanol [at the Argo Terminal] during the MOC window by reducing prices and filling the lower-priced bids of various ethanol purchasers" in order to manipulate the Platts benchmark price downward so that ADM's derivative bets would "pay off handsomely."  ([Filing No. 60-2](#)).  AOT alleges ADM's actions violated the CEA and seeks to represent and certify the following class:

> All persons who traded in or settled positions in Chicago Ethanol (Platts) Futures (CME symbol: CU), Chicago Ethanol (Platts) Average Price Options (CME symbol: CVR), or the CME's Ethanol Futures Contracts (CME symbol: EH) after November 1, 2017, and were damaged as a result of the decrease in the Chicago Ethanol (Terminal) price caused by ADM's trading activity at the Argo Terminal.

AOT alleges the following questions of law and fact are common to the class:

- whether ADM manipulated Chicago Benchmark Prices or the prices of Chicago Ethanol Derivatives;
- whether ADM's conduct constitutes manipulation under the CEA;
- whether ADM's conduct was willful and intentional;
- the appropriate Class-wide measure of damages, including whether Class members are entitled to additional punitive or exemplary damages equal to two times the amount of their actual damages under the CEA; and
- the appropriate injunctive and other equitable relief for the Class.

([Filing No. 60-2](#)).

Another related action against ADM was filed in the Central District of Illinois on July 23, 2020, by Midwest Renewable Energy, LLC ("MRE"), which is an ethanol producer, First Level seller, and a competitor of ADM in Nebraska.  MRE alleges that, although it seeks to represent ethanol producers rather than ethanol derivative traders as alleged in AOT's complaint, MRE's action similarly arises out of ADM's alleged intentional manipulation of ethanol prices beginning in November 2017.  MRE's complaint contains a claim for violations of Section 2 of the Sherman Act and seeks to represent and certify the following class:

> All First Level Sellers who, after November 1, 2017, made First Level Sales of ethanol in the Argo market or pursuant to a First Level Sales Contract in which the price term is expressly based, in whole or in part, on a Chicago Benchmark Price, Chicago OPIS Price, or a Chicago Ethanol Derivatives Price. This includes price

>   terms which are based on an average, a mean, or another formula using one or more of the foregoing prices.

MRE alleges the following questions of law and fact are common to the class:

- Whether ADM violated the Sherman Act;
- Whether ADM depressed Argo market prices, Chicago Benchmark Prices, Chicago OPIS Prices, or Chicago Ethanol Derivative Prices;
- Whether Plaintiff and Class Members suffered antitrust injury on their First Level Sales;
- Whether the fact and amount of injury to Plaintiff and Class Members may be shown by common economic and other evidence;
- Whether Plaintiff may submit evidence of an aggregate amount reflecting the total damages to Plaintiff and all Class Members;
- Whether declaratory relief, damages, or equitable or other relief is warranted.

(Filing No. 60-4).

The AOT and MRE actions are assigned to the same district judge and magistrate judge in the Central District of Illinois and ADM has filed a motion to consolidate those two cases for discovery. ADM also seeks to consolidate this case with the AOT and MRE cases for discovery, if the transfer is granted. (Filing No. 76-3).

## ANALYSIS

ADM moves the court to transfer this case to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Eighth Circuit has not provided an "exhaustive list of specific factors to consider" when determining whether to transfer a case under § 1404(a), but district courts should weigh any "case-specific factors" relevant to convenience and fairness to determine whether transfer is warranted. *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010)(citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). Factors the court can consider when balancing the convenience of the parties and witnesses include witnesses' willingness to appear, the ability to subpoena witnesses, adequacy of deposition testimony, accessibility to records and documents, the location where the conduct complained of occurred, and the applicability of each forum state's substantive law. See *id.* Factors the court can consider when considering the interest of justice include judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each

4

forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law. See *id.* Courts have broad discretion in determining whether to transfer a case under § 1404(a). See *id.*

As stated above, section 1404(a) only permits a case to be transferred to another forum "where it might have been brought," meaning, the plaintiff must have been able to file suit in the transferee court in the first instance. See *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). This requires the transferee court to be a proper venue and requires it to have personal jurisdiction over the defendant and subject matter jurisdiction over the case. See 15 C. Wright & A. Miller, Federal Practice and Procedure § 3845 (4th ed.) ("[C]ourts are uniform in requiring that the transferee have personal jurisdiction over the defendant and constitute a proper venue [and] both the transferor and transferee must have subject matter jurisdiction over the case."). Green Plains does not dispute that this case could have been brought in the Central District of Illinois. Federal courts have exclusive jurisdiction over actions for violations of the CEA. See 7 U.S.C. § 25(c). The Central District of Illinois is a proper venue and has personal jurisdiction over ADM because its North American headquarters is located in Decatur, Illinois, and the allegations of ADM's wrongful conduct took place there. Therefore, this case "might have been brought" in the Central District of Illinois.

Next, in balancing the case-specific factors relevant to convenience and justice, it is apparent that this case should be transferred to the Central District of Illinois. There is no question that judicial economy would best be served by the transfer. The factual basis for the actions filed by AOT, MRE, and Green Plains all arise out of ADM's alleged price manipulation scheme at the Argo Terminal in Illinois beginning in November 2017. In fact, the majority of Green Plains' complaint contains verbatim allegations as contained in the AOT and MRE complaints and includes the same graphics and charts. Green Plains attempts to differentiate its case from AOT and MRE cases by suggesting this action is the only case brought on behalf of physical ethanol sellers. However, review of MRE's complaint demonstrates that MRE is also an ethanol seller and producer seeking to represent a class of ethanol producers and sellers harmed by ADM's alleged price manipulation scheme. Green Plains further attempts to differentiate its case based upon its additional claim for tortious interference with contracts for the physical sale of ethanol. But again, Green Plains' tortious interference claim arises entirely out of the same factual allegations supporting AOT's and MRE's claims.

Green Plains' allegations of questions of law and fact common to its proposed class are nearly identical to those presented in the AOT and MRE complaints, including: whether ADM manipulated Chicago Benchmark Prices or the prices of Chicago Ethanol Derivatives; whether ADM's conduct constitutes manipulation under the CEA; whether ADM's conduct was willful and intentional; the appropriate class-wide measure of damages, including whether members of the proposed Class are entitled to additional punitive or exemplary damages under the CEA; and the appropriate injunctive and other equitable relief for the proposed Class. While MRE's and Green Plains' proposed class definitions are not identical, there is substantial overlap.

The fact that AOT filed its complaint in the Central District of Illinois on September 4, 2019, more than ten months before Green Plains filed this related action, also weighs in favor of transfer because the two other putative class action cases are pending before the same district judge and magistrate judge in that district, and the parties have already engaged in motion practice and discovery there. A motion to consolidate the AOT and MRE cases for discovery is under the court's consideration in the Central District of Illinois, and many of the same witnesses and much of the same discovery will be relevant in all three actions. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); see *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs.*, No. CIV.02-1224 RHK/AJB, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (citing 17 Moore's Federal Practice § 111.13[1][o])("Judicial economy is served by allowing related actions to proceed in the same district."); see also *Hoban v. United States Food & Drug Admin.*, No. CV 18-269 (JNE/LIB), 2018 WL 3122341, at *3 (D. Minn. June 26, 2018)("Without transfer here, multiple judges will consider the same questions, review the same record, read the same briefs, and write opinions resolving the same issues. Section '1404(a) was designed to prevent' this wastefulness.").

Green Plains primarily argues that this court should give considerable deference to its choice of forum. The Eighth Circuit has explained that, in general, federal courts give considerable deference to a plaintiff's choice of forum. See *In re Apple*, 602 F.3d at 913 (8th Cir. 2010). However, while there may be "good reason why [a case] should be tried in the plaintiff's home forum if that has been his choice" when there are only two parties to a dispute, the plaintiff's choice of forum is given less deference in a class action case. *Koster v. (Am.) Lumbermens Mut. Cas.*, 330

U.S. 518, 524 (1947)("[W]here . . . there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Additionally, a plaintiff's choice of forum "is given substantially less weight if 'operative events' giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff." *Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp.*, No. CIV 06-537 RHK/RLE, 2006 WL 2085413, at *4 (D. Minn. July 25, 2006)(quoting 17 Moore's Federal Practice § 111.13[1][c]). Although Green Plains alleges ADM's price manipulation caused financial harm to Green Plains in Nebraska, ADM's alleged misconduct, i.e., the "operative events," took place in Central District of Illinois. Under the circumstances, Green Plains' choice of forum, while given some weight, is nevertheless heavily outweighed by judicial economy and consistency.

Nebraska is also the more convenient forum for Green Plains, which is headquartered in Nebraska and operates some bioprocessing plants in Nebraska. Many of Green Plains' witnesses also are in Nebraska. But, Green Plains does not exclusively conduct business in Nebraska; it also conducts business and produces ethanol in several other states, including Illinois. See *Sirius Computer Sols., Inc. v. Evans*, No. 8:11CV439, 2012 WL 13055016, at *10 (D. Neb. Apr. 23, 2012)(providing less deference to the plaintiff's choice in forum because the plaintiff conducted business in the transferee court's state). Green Plains is represented by local counsel—as well as counsel from New York and Chicago. Conversely, ADM's witnesses as well as most of the relevant records and other evidence are located in the Central District of Illinois. See *id.* (concluding that, despite the ability to transmit documents electronically, transfer was warranted in part because none of the documents to be used as evidence were in Nebraska). And, as stated above, many of the same witnesses and much of the same discovery will be relevant in this action as well as the AOT and MRE actions, so on the whole it would be more convenient—and more efficient—to conduct discovery in a single forum. In sum, although Nebraska may be more convenient for Green Plains, Green Plains' convenience is outweighed by the convenience of the other witnesses and by judicial economy and consistency.

For the foregoing reasons, and after balancing the case-specific factors relevant to convenience and justice, the Court finds that ADM has met its burden to show that this case should be transferred to the Central District of Illinois pursuant to § 1404(a).

ADM also filed a motion to dismiss Green Plains' complaint for failure to state a claim (Filing No. 61). The Court stayed briefing on ADM's motion to dismiss pending the resolution of the motion to transfer venue. (Filing No. 66; Filing No. 67; Filing No. 71). Having concluded that ADM's motion to transfer venue should be granted, the Court will deny ADM's motion to dismiss as moot, subject to reassertion after the case has been transferred. Upon consideration,

**IT IS ORDERED**:

1. Defendant's the Motion to Transfer Venue of Plaintiffs' Class Action Complaint Under 28 U.S.C. § 1404(a) (Filing No. 58) is granted;
2. The case shall be transferred to the United States District Court, Central District of Illinois;
3. Defendant's Motion to Dismiss (Filing No. 61) is denied as moot, subject to reassertion after transfer; and
4. If no party files an objection to this Order on or before **November 20, 2020**, the Clerk of the Court shall take every action needed to accomplish the transfer and to terminate this case for statistical purposes. Failure to timely object may constitute a waiver of any objection to this Order. See NECivR 72.2.

Dated this 6th day of November, 2020.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge