E-FILED
Monday, 16 August, 2021 10:36:29 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| GREEN PLAINS TRADE GROUP, LLC, *et al.*, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 20-CV-2332 |
| ARCHER DANIELS MIDLAND COMPANY, | ) ) ) ) |
| Defendant. | ) |

# ORDER

Plaintiffs, collectively referred to as "Green Plains," individually and on behalf of all others similarly situated, filed a Class Action Complaint (#1) on July 14, 2020, against Defendant Archer Daniels Midland Company ("ADM"), alleging that ADM manipulated the benchmark price of ethanol downward in violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq.* ADM filed a Motion to Dismiss (#82) on December 10, 2020. Plaintiffs filed a Response in Opposition to Defendant's Motion to Dismiss (#90) on January 14, 2021, and ADM filed a Reply in Support of its Motion to Dismiss (#92) on February 1, 2021.

For the following reasons, ADM's Motion to Dismiss (#82) is GRANTED.

I. BACKGROUND

The following background facts are taken from the allegations in Plaintiff's Complaint (#1). At this stage of the proceedings, the court must accept as true all material allegations in the Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

This is a putative class action involving alleged unlawful manipulation of the market price of ethanol by ADM. The alleged conduct occurred at the Kinder Morgan terminal in Argo, Illinois ("Argo Terminal"), which serves as the price reference point for nearly all physical and financial ethanol transactions globally. Trading for ethanol at the Argo Terminal during the "Market-on-Close" ("MOC") period from 1:00 P.M. to 1:30 P.M. each trading day determines the Chicago Benchmark Price created by S&P Global Platts ("Platts"). Platts' Chicago Benchmark Price sets the value of Chicago Ethanol Derivatives (i.e., ethanol futures contracts and options contracts traded on the Chicago Mercantile Exchange). Trades at the Argo Terminal are also used by the Oil Price Information Service ("OPIS") in its reports of daily Chicago OPIS Prices.

Plaintiffs, the other proposed class members, and ADM are all ethanol producers who sell ethanol at prices tied to pricing benchmarks determined or otherwise impacted by Platts or OPIS price assessments.

Prior to November 2017, ADM had been a predominant buyer of ethanol at the Argo Terminal. Plaintiffs allege that, beginning in November 2017, ADM repeated a two-step scheme each month: first, ADM took outsized short positions in Chicago

2

Ethanol Derivatives, betting that the price of ethanol would decrease; and second, ADM drove down the price of ethanol during the MOC window to ensure that its short bets would be profitable. The alleged conduct by ADM included uneconomically shipping ethanol to Argo when the prices at the Argo Terminal were already lower than those at other terminals; selling ethanol at the Argo Terminal for less than ADM's variable cost to produce or obtain the ethanol; selling during the MOC even when ADM did not have physical ethanol to deliver to satisfy the sales contracts; and aggressively reducing its prices during the MOC window to capture up to 90-100 percent of sales during that window.

Plaintiffs allege that ADM's conduct resulted in a decrease of ethanol prices at the Argo Terminal and an accompanying decrease in the Chicago Ethanol Derivative Prices determined by the daily MOC prices at the Argo Terminal. Plaintiffs allege that ADM sacrificed its profits on physical sales of ethanol during the MOC in order to leverage even larger profits on its derivatives contracts.

ADM's behavior at the Argo Terminal after November 2017 led various market participants to complain to Platts about potential manipulation of the Chicago Benchmark Price. In response, Platts hosted a meeting on July 19, 2018, in which participants, including Plaintiffs, discussed ADM's aggressive selling during the MOC window as evidence that the Benchmark Price could be unduly manipulated.

Plaintiffs allege that that they and other class members incurred losses when they sold physical ethanol pursuant to contracts in which prices were tied to the manipulated Chicago Benchmark Price.

II. DIMISSAL UNDER RULE 12(B)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In assessing a motion to dismiss, the court must draw all reasonable inferences in favor of the plaintiff but need not accept as true any legal assertions, threadbare recitals of the elements of a cause of action, or conclusory statements. See *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014).

III. ANALYSIS

Plaintiff's Complaint contains two counts: (1) manipulation in violation of the Commodity Exchange Act and (2) common law tortious interference with contractual relations.

A. Count I: Commodity Exchange Act

In Count I of the Complaint, Plaintiffs allege violations by ADM of the CEA, citing 7 U.S.C. §§ 6b(a), 6c(a), 9(1), 9(3), 13(a)(2), and 25(a), and 17 C.F.R. § 180.2.

1. *Section 25*

The court's analysis begins with § 25(a) because that is the section that creates a private right of action under the CEA. In fact, under § 25(a), only certain persons injured by a violation of the CEA may bring suit:

4

> [S]tanding to bring a CEA manipulation claim under 7 U.S.C. § 25(a)(1)(D) requires that the plaintiffs' injury arise as a result of having purchased or sold "a contract of sale of any commodity for future delivery (or option on such contract or any commodity)…" 7 U.S.C. § 25(a)(1)(B). In this Circuit, this means a futures contract. *Commodity Futures Trading Comm'n v. Zelener*, 373 F.3d 861, 865-66 (7th Cir. 2004); *Nagel v. ADM Investor Servs., Inc.*, 65 F.Supp.2d 740, 751 (N.D. Ill. 1999), *aff'd*, 217 F.3d 436 (7th Cir. 2000).

*Thompson's Gas & Electric Service, Inc. v. BP America, Inc.*, 691 F.Supp.2d 860, 871-72 (N.D. Ill. 2010).

Therefore, a "condition precedent of § 25(a)(1)(D) is that the plaintiff purchased or sold a contract for future delivery." *In re Dairy Farmers of America, Inc., Cheese Antitrust Litigation*, 60 F.Supp.3d 914, 965 (N.D. Ill. 2014); see also *BDI Capital, LLC v. Bulbul Investments LLC*, 446 F.Supp.3d 1127, 1135 (N.D. Ga. 2020). "Purchasers of physical commodities whose prices were affected by futures trading do not have a claim" under the CEA. *In re Dairy Farmers of America*, 60 F.Supp.3d at 965-66; see also *Berk v. Coinbase, Inc.*, 2018 WL 5292244, at *2 (N.D. Cal. Oct. 23, 2018).

Nowhere in the Complaint do Plaintiffs allege that they or other proposed class members purchased or sold futures contracts or other derivatives contracts. Rather, in Count I, brought under the CEA, Plaintiffs allege in paragraph 170:

> As a direct result of ADM's unlawful conduct, Plaintiffs and other members of the Class suffered actual damages and injury in fact due to losses they incurred when selling *physical* ethanol at prices that were determined in reliance upon the aforementioned Argo Terminal between November 2017 and the present[.]

(emphasis added).

Plaintiffs argue that 2010 amendments to the CEA in the Dodd-Frank Act newly authorized a private right of action by traders of physical commodities. However, a review of the statutory language reveals that the amendments to § 25 had no impact on the language that authorized lawsuits only by persons who purchased or sold "any contract of sale of any commodity for future delivery (or option on such contract or any commodity)." 7 U.S.C. § 25(a)(1)(B). Moreover, Plaintiffs cite just one case in support of their purported standing to sue under § 25: *Harry v. Total Gas & Power North America, Inc.*, 889 F.3d 104 (2d Cir. 2018). However, the plaintiffs in that case were "various individuals and entities that traded natural gas *derivatives*" and "[n]one of them claims to have traded any natural gas[.]" *Harry*, 889 F.3d at 109 (emphasis added).

Therefore, because traders of physical commodities are not authorized to bring suit under the CEA, Count I of the Complaint is DISMISSED with prejudice.

2. *Section 6b(a)*

Section 6b(a) of the CEA prohibits fraud in commodity futures contracts. To establish a violation of this section, a plaintiff must prove: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality. *Commodity Futures Trading Commission v. International Financial Services (New York), Inc.*, 323 F.Supp.2d 482, 499 (S.D.N.Y. 2004), citing *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). Such facts must be pled with "particularity." *DGM Investments, Inc. v. New York Futures Exchange, Inc.*, 265 F.Supp.2d 254, 263 (S.D.N.Y. 2003); *Commodity Futures Trading Commission v. American Metals Exchange Corp.*, 693 F.Supp. 168, 190 (D.N.J. 1988) (fraud based complaints under the CEA must

be pled with sufficient particularity to comply with Fed. R. Civ. P. 9(b)). A plaintiff must additionally show that the fraud was: (1) in connection with an order to make or the making of a contract of sale of a commodity for future delivery, and (2) made for or on behalf of another person. *Commodity Trading Futures Commission v. Driver*, 877 F.Supp.2d 968, 977 (C.D. Cal. 2012).

Plaintiffs do not dispute, or even respond to, ADM's argument that they have not specifically pled that ADM made a misrepresentation in connection with any order to make or the making of any contract of sale of any commodity, or that ADM made any misrepresentation at all. Therefore, the court finds Plaintiffs have conceded this point. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver," and results in a silence from which the court can infer concession of an argument); *Cintora v. Downey*, 2010 WL 786014, at *4 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."). In fact, in a footnote, Plaintiffs concede that this court has already held that substantially the same allegations in the complaint filed in *AOT Holding AG v. Archer Daniels Midland Co.*, case no. 19-CV-2240 (C.D. Ill.), were insufficient to state a claim under § 6b(a).

Therefore, to the extent that Count I of the Complaint is based on § 6b(a), it is DISMISSED for this reason as well.

### 3. *Section 6c(a)*

Section 6c(a) makes it unlawful to enter into, offer to enter into, or confirm the execution of certain transactions, including a "fictitious sale" or any transaction "used to cause any price to be reported, registered, or recorded that is not a true and bona fide price." 7 U.S.C. § 6c(a). As this court previously held in *AOT Holding AG*, § 6c(a) "cannot sustain a private cause of action." *Ploss v. Kraft Foods Group, Inc.*, 197 F.Supp.3d 1037, 1067 (N.D. Ill. 2016); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 676-79 (N.D. Ga. 1983).

Therefore, to the extent that Count I of the Complaint is based on § 6c(a), it is DISMISSED for this reason as well.

### 4. *Statute of Limitations*

ADM argues that, in addition to dismissal due to lack of standing to sue under §§ 25(a) and 6c(a) and for failure to state a claim under § 6b(a), Count I of Plaintiffs' Complaint is also barred by the statute of limitations.

The CEA states that all suits "shall be brought not later than two years after the date the cause of action arises." 7 U.S.C. § 25(c). Here, the parties agree that the "discovery accrual rule" applies. See *U.S. v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010); *Ploss*, 197 F.Supp.3d at 1066 (Under the CEA, "[t]he limitations period begins to run when the plaintiff has actual or constructive knowledge—that is, 'when [they] knew or in the exercise of reasonable diligence should have known of defendant's alleged misconduct.'").

8

ADM cites *Levy v. BASF Metals Limited*, 917 F.3d 106 (2d Cir. 2019), for the proposition that it is "discovery of the injury, not discovery of the other elements of a claim" that "starts the clock." *Levy*, 917 F.3d at 108. Because Plaintiffs' Complaint specifically alleges that ADM's manipulation and the resulting injuries began in November 2017, ADM argues that the filing of Plaintiffs' case on July 14, 2020 was untimely.

Plaintiffs argue that, while ADM's aggressive selling of ethanol began in November 2017, Plaintiffs did not yet have the requisite knowledge of their losses because they "took the form of reduced closing prices on their ethanol sales that, while significant, were not so drastic as to be immediately distinguishable from volatility caused by other, nonmanipulation factors."

Moreover, the court notes that the Seventh Circuit has indicated that "the discovery [accrual] rule starts the statute of limitations running only when the plaintiff learns that he's been injured, *and by whom*." *Norwood*, 602 F.3d at 837 (emphasis added).

Here, Plaintiffs' Complaint indicates that the meeting at which Plaintiffs and other market participants discussed ADM's aggressive selling tactics as evidence of undue manipulation of the Chicago Benchmark Price was held in July 2018. In their Response to the motion to dismiss, Plaintiffs further specify that the meeting was held on July 19, 2018, less than two years before their Complaint was filed on July 14, 2020.

Generally, considering the statute of limitations on a motion to dismiss is inappropriate because it represents an affirmative defense. *FDIC v. Kime*, 12 F.Supp.3d 1113, 1118 (S.D. Ill. 2014). Because a plaintiff need not anticipate or allege facts that

9

would defeat affirmative defenses, a court typically cannot dismiss a complaint for failure to satisfy a statute of limitations until summary judgment. *Kime*, 12 F.Supp.3d at 1118. Only when "'the relevant dates are set forth unambiguously in the complaint[]' [may] a court … reach a statute of limitations argument on a motion to dismiss." *Kime*, 12 F.Supp.3d at 1119, quoting *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

Here, drawing all reasonable inferences in favor of Plaintiffs, as the court is required to do, and noting that the date on which Plaintiffs had actual or constructive knowledge that they had been injured by ADM is not unambiguous from the face of the Complaint, the court does not find that the Complaint is barred by the statute of limitations. Therefore, Count I is dismissed due only to Plaintiffs' lack of standing to sue under §§ 25(a) and 6c(a), and additionally for Plaintiffs' failure to state a claim under § 6b(a).

B. <u>Count II: Tortious Interference with Contractual Relations</u>

In Count II, Plaintiffs allege that they and other class members had valid contractual relationships for the sale of physical ethanol that were tied to pricing benchmarks affected by ADM's unlawful manipulation, and that ADM caused those contractual relations "to be less profitable, which made their performance more expensive." For purposes of the motion to dismiss, the parties apparently agree that this claim is brought pursuant to Nebraska common law.

This case is in federal court due to Plaintiff's CEA claim, as the court has federal question jurisdiction under 28 U.S.C. § 1331. In order for this case to remain in federal court, the court must exercise supplemental jurisdiction over the state law tortious interference claim.

ADM requests that the court exercise supplemental jurisdiction in order to dismiss the tortious interference claim. ADM argues that the CEA preempts this claim because it would expand the limitations that were put on private rights of action under § 25 of the CEA and would interfere with the scheme to redress other violations of the CEA through enforcement by the Commodity Futures Trading Commission, the Department of Justice, or a state attorney general or other state officer.

However, in giving effect to all provisions of the CEA, the Seventh Circuit has held that "Congress intended to preempt some, but not all, state laws that bear upon the various aspects of commodity futures trading." *American Agriculture Movement, Inc. v. Board of Trade of City of Chicago*, 977 F.2d 1147, 1155 (7th Cir. 1992), abrogated on other grounds by *Time Warner Cable v. Doyle*, 66 F.3d 867 (7th Cir. 1995); see also *Effex Capital, LLC v. National Futures Association*, 933 F.3d 882, 893-94 (7th Cir. 2019). More specifically, the Seventh Circuit concluded that state laws that "directly affect trading on or the operation of a futures market ... [are] preempted" but that when "the application of state law would affect only the relationship between brokers and investors or other individuals *involved* in the market, preemption is not mandated." *American Agriculture Movement*, 977 F.2d at 1156-57 (emphasis added).

11

Because ADM is simply a market participant, rather than a futures exchange or regulatory organization such as the Chicago Board of Trade or the National Futures Association, the Seventh Circuit would likely hold that common law claims against ADM are not preempted by the CEA.

"The supplemental jurisdiction statute provides that a district court 'may' decline to exercise jurisdiction over supplemental state-law claims for several enumerated reasons, including where 'the district court has dismissed all claims over which it has original jurisdiction.'" *In re Repository Technologies, Inc.*, 601 F.3d 710, 724 (7th Cir. 2010), quoting 28 U.S.C. § 1367(c)(3). A federal court's decision to exercise supplemental jurisdiction over state law claims is discretionary, and, absent unusual circumstances, "district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019).

Here, the parties' remaining arguments about the tortious interference claim largely relate to whether the Nebraska Supreme Court has recognized § 655A of the Restatement of Torts. Therefore, in an exercise of this court's discretion, the court declines to exercise supplemental jurisdiction over Plaintiffs' claim for tortious interference with contractual relations, brought pursuant to Nebraska common law.

Therefore, Count II of the Complaint is DISMISSED without prejudice.

IT IS THEREFORE ORDERED:

(1) The Motion to Dismiss (#82) is GRANTED. Count I of the Complaint (#1) is DISMISSED with prejudice. The court relinquishes supplemental jurisdiction of Count II, which is dismissed without prejudice.

(2) This case is terminated.

ENTERED this 16th day of August, 2021.

s/Colin Stirling Bruce<br>
COLIN S. BRUCE<br>
U.S. DISTRICT JUDGE